UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY D. KUDSK,<br><br>    Plaintiff,<br><br>    v.<br><br>BARA INFOWARE, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-05350-SI<br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE AND DENYING AS MOOT MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. Nos. 52, 53 |

This case is before the Court on two motions filed by use-plaintiff and counter-defendant Larry D. Kudsk, doing business as Kudsk Construction Services ("Kudsk"). The first is a motion for dismissal of counterclaims and/or for judgment on the pleadings. Dkt. No. 52. The second is a motion to dismiss counterclaims or transfer for improper venue or, in the alternative, to transfer for convenience. Dkt. No. 53. These motions came on for hearing on June 28, 2019.

**BACKGROUND**

On September 15, 2017, Kudsk filed suit in this district against defendants Bara Infoware, Inc. ("Bara")[1] and Fidelity and Deposit Company of Maryland ("F&D"). Dkt. No. 1. Kudsk amended the complaint the following day, bringing two claims for relief: (1) breach of written contract against Bara, and (2) action upon Miller Act payment bond against Bara and F&D. Dkt. No. 5. Kudsk alleged that on October 13, 2015, the Air Force National Guard awarded Bara a prime contract to replace the roof at Building 681 at Moffett Field in Santa Clara County, California. *Id.*

---

[1] The case caption on the complaint lists this defendant as "Bara Inforware, Inc." but the text of the pleadings refers to the entity as "Bara Infoware, Inc."

¶ 7. F&D acted as surety under the Miller Act, 40 U.S.C. § 3133, "whereby F&D guaranteed the payment to all entities supplying the labor, services and material in the prosecution of the work provided for in the Contract for the Project and all duly requested and/or authorized modifications thereto." *Id.* ¶ 8. On March 27, 2016, Bara and Kudsk entered into a written subcontract agreement in which Kudsk agreed to perform the roofing work for $375,000.00. *Id.* ¶ 9. Kudsk alleges "that during construction of the Project, BARA directed KUDSK to perform additional roofing work . . . and issued Change Orders to the Subcontract Agreement increasing the final amount to the sum of $443,000.00." *Id.* ¶ 10. Kudsk further alleges that Bara has since paid a portion of the total sum to Kudsk and a portion to his suppliers, but "that an unpaid subcontract balance of $93,190.50 remains unpaid." *Id.* This is the amount over which Kudsk is suing Bara and F&D.

F&D answered the amended complaint on November 10, 2017. Dkt. No. 11. On November 29, 2017, the Court Clerk entered default against Bara. Dkt. No. 23. At the initial case management conference before this Court in January 2018, the parties indicated that the case may settle prior to trial. Dkt. No. 30. The Court then approved several requests to extend the deadline to conduct early neutral evaluation, as the parties indicated they were waiting on documents from the United States Department of Labor ("DOL") that were not yet available and that were material to the case. Dkt. Nos. 34, 39. On June 4, 2018, upon notification that the parties had settled, the Court entered an order conditionally dismissing the case and giving the parties ninety days to inform the Court if settlement had not in fact occurred. Dkt. Nos. 41, 42. On August 30, 2018, counsel for Kudsk filed a certification that settlement had not occurred because, according to Kudsk, "Use-Plaintiff has been unable to resolve the unrelated United States Department of Labor claim, and therefore the condition precedent upon which the settled [sic] was based has not occurred," and asked the Court to restore this matter to its docket. Dkt. No. 43 ¶ 9.

The Court set a case management conference for September 28, 2018. In the joint case management statement, F&D indicated that it intended to seek the Court's leave "to file a Counter-Claim against KUDSK based upon the DOL claim against KUDSK . . . . Use-Plaintiff KUDSK does not oppose this request." Dkt. No. 45 at 2. The parties further stated, "While counsel has not yet been provided a draft copy of the proposed Counter-Claim, Use-Plaintiff KUDSK will not

oppose a Motion for Leave to file a Counter-Claim based upon the DOL's wage claim against KUDSK." *Id.* At the case management conference, the Court granted F&D leave to file its counterclaim, ordered that the parties complete early neutral evaluation in February 2019, and set dates for the dispositive motion hearing (June 28, 2019) and for the bench trial (August 19, 2019). Dkt. No. 46.

On October 9, 2018, F&D filed an answer to the amended complaint and filed its counterclaim. Dkt. No. 48. That counterclaim is now the subject of the present motions to dismiss. In the counterclaim, F&D alleges the following. "Third-party Federal Solutions Group, Inc. ('FSG') was awarded . . . six federal construction projects by the United States Air Force to be performed at Vandenberg Air Force Base" located in Santa Barbara County, California. Counterclaim ¶ 5. These included contracts to repair the entire HVAC system in Building 91-90 and to repair the fire detection system at the Temporary Living Facility ("TLF"). *Id.* "FSG as principal and F&D as surety executed and delivered to the United States Air Force separate Performance and Payment Bonds for each of the Vandenberg Projects, in accordance with the requirements of the *Miller Act* (40 U.S.C. §3131-3134)." *Id.* ¶ 6. In November 2017, FSG issued Letters of Voluntary Default notifying the United States that it was unable to perform or complete its work on the projects, and the United States thereafter made demand upon F&D to perform and complete performance of the construction work on the projects. *Id.* ¶¶ 7-8. F&D states that "[a]s completing surety, F&D will be entitled to the contract funds earmarked for the Vandenberg Projects . . . ." *Id.* ¶ 10. "F&D has arranged for the completion or performance of the bonded work on the Vandenberg projects through The Vertex Companies, Inc. ('Vertex')" and Vertex "retained Kudsk to complete the work on all of the Vandenberg Projects. The HVAC Project must be completed by November 5, 2018[,]" or in slightly less than one month from the filing of F&D's counterclaim. *See id.* ¶¶ 9, 11.

F&D alleges that Kudsk began work on the HVAC Project in May 2018 and that the agreement between Vertex and Kudsk required Kudsk to complete work on the HVAC Project by August 16, 2018. *Id.* ¶ 12. F&D alleges that "[b]eginning in or about July 2018, Kudsk failed to supply sufficient manpower to meet project milestones causing the project to fall behind schedule and Kudsk failed to meet the August 16, 2018 completion date on the HVAC Project." *Id.* ¶ 13.

3

"F&D is informed and believes that it may incur damages to the extent the HVAC Project is not delivered to the United States Air Force by November 5, 2018." *Id.* ¶ 14.

The counterclaim also raises allegations related to a contract awarded to FSG by the Federal Bureau of Prisons to re-roof buildings at the Federal Correctional Institute in Dublin, California. *See id.* ¶ 15. "FSG entered into a subcontract with Kudsk, or a company controlled by Kudsk, . . . to perform work on the BOP Project[,]" and the counterclaim alleges that Kudsk did perform such work. *Id.* ¶ 16. Following this work, the DOL conducted an investigation into Kudsk's compliance with prevailing wage and fringe benefit obligations related to the BOP Project and determined that Kudsk failed to pay the required prevailing wages, resulting in approximately $111,000 in back wages owed. *Id.* ¶¶ 18-19. "F&D is informed and believes that Kudsk has not agreed to pay the back wages and, as a result, the DOL has issued a Withhold Request Letter requested [sic] the Contracting Officer for the United States Air Force to withhold approximately $111,000 from payments due on the" contract for repair of the fire detection system at TLF that is part of the Vandenberg Projects. *See id.* ¶ 22. As a result, the counterclaim alleges, "money that would otherwise be paid to F&D will not be available to offset the costs of completing" the contract for repair of the fire detection system at TLF. *Id.* ¶ 23. Moreover, "F&D is informed and believes that with the exception of the HVAC Project, Kudsk's problems with the DOL have delayed the commencement of the remaining work on the Vandenberg Projects potentially increasing F&D's completion costs to complete these projects." *Id.* ¶ 24.

F&D brings two claims for relief: (1) declaratory relief, seeking a declaration that "F&D is entitled to an offset from any amounts Kudsk proves he is owed on the Amended Complaint [in] an amount equivalent to the monies deducted from the contract funds earmarked for the Vandenberg Projects as a result of . . . the DOL withhold request" and an offset in "an amount equivalent to any damages [F&D] sustains in completing the Vandenberg Projects . . . as a result of Kudsk's failure to fulfill its obligations in completing the work on the HVAC Project;" and (2) equitable indemnity "[f]or an amount equal to any monies deducted from F&D out of the contract funds earmarked for the Vandenberg Projects as a resulting [sic] of Kudsk's labor issues and the DOL withhold request" and "[f]or any damages incurred by F&D in completing the Vandenberg Project as a resulting [sic]

4

of Kudsk's labor issues and the DOL withhold request and its failure to fulfill its obligations in completing the work on the HVAC Project[.]" *Id.* at 14-15.

On October 30, 2018, Kudsk answered the counter-complaint, alleging, among other things, that because the counterclaim contains allegations regarding the HVAC Project based in Santa Barbara County, "venue for KUDSK's Counter-Claim against Counter-Claimant FIDELITY AND DEPOSIT COMPANY OF MARYLAND . . . upon the Miller Act bond issued for the HVAC Project would be vested in the United States District Court, Southern District of California pursuant to Title 40, U.S.C. §3133(b)(3), not within the Northern District of California. To the extent F&D intends to withhold funds from KUDSK based upon these allegations, it is KUDSK's intention to file suit on the Miller Act bond in the United States District Court, Southern District of California." Dkt. No. 50 ¶ 2.[2]

In the meantime, on January 17, 2019, Kudsk filed a separate action in the Central District of California, alleging breach of written subcontract against FSG, breach of the ratification agreement and action upon Miller Act payment bond against F&D, and breach of written subcontract against Vertex, all related to the Vandenberg HVAC Project. *Kudsk v. Fed. Sols. Grp.*, No. 19-cv-00389-SVW-RAO (C.D. Cal. Jan. 17, 2019). On March 13, 2019, F&D filed a counterclaim for equitable indemnity and declaratory relief also related to construction projects at Vandenberg. According to Kudsk, the parties met and conferred regarding Kudsk's intent to file a Rule 12(b)(6) motion to dismiss, and on April 30, 2019, F&D filed an amended counterclaim. *See* Dkt. No. 53 at 7. In the amended counterclaim in that case, F&D brought claims for relief for contractual indemnity, breach of contract, and declaratory relief, the same counterclaims it seeks to bring in a proposed amended counterclaim here, as explained further below.

In this case, after settlement efforts failed in February 2019, Kudsk filed the present motions on May 24, 2019, setting them for hearing on June 28. *See* Dkt. Nos. 51, 52, 53. This case is set for a bench trial beginning August 19, 2019. Trial in the Central District of California case is set

---

[2] This allegation seems to misapprehend in which district Santa Barbara County is located. It is located in the Central District of California, not the Southern District. *See* https://www.cacd.uscourts.gov/jurisdiction.

for August 20, 2019.

**DISCUSSION**

The Court first analyzes Kudsk's motion to transfer venue, as the outcome of that motion will determine the outcome of the Court's ruling on the motion to dismiss.

**I. Motion to Dismiss or Transfer for Improper Venue or, In the Alternative, to Transfer for Convenience (Dkt. No. 53)**

Kudsk moves to dismiss or transfer F&D's counterclaims for improper venue or, alternatively, asks that the Court transfer the counterclaims for convenience, citing Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a). Kudsk states that under 28 U.S.C. § 1404(a) the interests of justice and convenience of the parties would be served by transferring the counterclaims to the Central District of California, where the Vandenberg Project was located.[3]

In opposition, F&D makes clear that its true concern is with attorneys' fees. If the counterclaims are transferred to another district, all that will remain in this case are Kudsk's claims related to the $93,190.50 that Kudsk states it is owed on the Moffett Field project. F&D argues that "Kudsk attempts to dismiss or transfer F&D's affirmative claims to protect Kudsk's ability to be the prevailing party in this lawsuit" and that such an outcome is unjust. Dkt. No. 55 at 1. F&D repeatedly states in its papers that its "litigation objective and strategy is that its Counterclaim will yield a return greater than Kudsk's claim." *See id.* at 8.

---

[3] Kudsk argues that venue for the counterclaims is improper under Rule 12(b)(3) because "the Counterclaim of F&D is based upon different construction projects located in other counties and in other judicial districts." Dkt. No. 53 at 8. He states that he preserved his objection to venue under Rule 12(b)(3) in his answer, when he stated that "venue for Kudsk's Counterclaim against Counterclaimant [F&D] upon the Miller Act bond issued for the HVAC Project would be vested in the United States District Court, Southern District of California pursuant to Title 40, U.S.C. §3133(b)(3), not within the Northern District of California." Dkt. No. 53 at 8 (citing Dkt. No. 50 ¶ 2). F&D argues that Kudsk waived his ability to bring a motion under Rule 12(b)(3) by not objecting to venue in an affirmative defense and through Kudsk's actions such consenting at the September 2018 case management conference to F&D's filing its counterclaim in this district and by participating in discovery regarding the counterclaim. The Court has doubts about whether Kudsk properly reserved any right to object to venue as improper under Rule 12(b)(3), for the reasons F&D cites in its opposition. Accordingly, the Court analyzes his request under 28 U.S.C. § 1404.

In reply, Kudsk argues that F&D should be prevented from recovering twice on the same claims in two different districts and that litigating the counterclaims in both the Northern and Central districts would be a waste of judicial resources. Kudsk also notes that at the time he agreed to the filing of the counterclaims here, the Central District action did not yet exist. Kudsk filed that case in January 2019, and F&D filed its counterclaim in that case in March 2019.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted).

"Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted)). In making the determination, a court may consider: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014).

Here, the Court concludes that transferring the case to the Central District of California is appropriate under 28 U.S.C. § 1404(a). Transferring the case will resolve both Kudsk's and F&D's primary concerns. Kudsk states that the Central District is a more convenient venue for trial because the Vandenberg Projects were located there and also argues that F&D should not be allowed to litigate its counterclaims in two different districts at the same time. F&D is concerned that splitting its counterclaims off from Kudsk's primary claim will unfairly leave Kudsk as the prevailing party in the case pending in this district. While the Court is not persuaded that attorney's fees considerations should dictate where this case is litigated, the broader point that F&D makes is that

the claims at issue here are part of a larger world of claims that Kudsk and F&D have against each other based on various construction projects. The convenience of the parties and interests of judicial economy weigh in favor of resolving all of these claims together at once. Moreover, Kudsk's point about convenience for the purposes of trial is well taken; while there appear to be a number of factual disputes at this stage about what occurred on the Vandenberg projects (located in Santa Barbara County) and who is owed what as a result, the parties seem almost to concede the facts of what is owed to whom as a result of the projects that took place in this district (i.e. the Moffett Field project in Santa Clara County and the BOP project in Alameda County). At the hearing on the motions, F&D represented that the only witness it plans to call on Kudsk's Moffett Field claim is plaintiff Larry Kudsk. Thus, it appears that the bulk of the disputed facts to be resolved at trial arise out of events that occurred in the Central District.

Although courts typically give substantial deference to a plaintiff's choice of forum, and Kudsk chose to file his claims here, this case is atypical in that Kudsk is the party now moving for a change of forum (albeit for the counterclaims only). Neither party will be prejudiced or inconvenienced by litigation in the Central District of California, as evidenced by the fact that both parties are simultaneously litigating related or identical claims in that district and have not raised venue-related concerns there. Of additional note is that, in its opposition to Kudsk's motion to dismiss, F&D asks the Court for leave to amend its counterclaims. The proposed amended counterclaim that F&D attaches precisely mirrors the amended counterclaim currently on file in the case in the Central District. *Compare* Dkt. No. 54-1 *with* Case No. 19-cv-00389, Dkt. No. 25 (C.D. Cal. Apr. 30, 2019).

Transfer to the Central District of California will not raise choice of law issues, as both venues are located within California, and the parties appear to agree from their briefing that California provides the applicable state law here. Finally, the timing of trial does not weigh against transfer, as trial in the Central District case is set to begin on August 20, 2019, only one day later than trial in this case is set to begin here.

At the hearing, when the Court proposed transferring the entirety of this case to the Central District, F&D consented to such a transfer, objecting only to a transfer that would create piecemeal

litigation by separating off the counterclaims. When asked whether Kudsk objected to transfer of the entire case, counsel for Kudsk stated only that she did not think it was possible to transfer Kudsk's claims because the statute provides that a Miller Act claim must be filed in the district in which the project occurred.[4] In response, F&D stated that the venue provision is for the protection of the defendant, that the defendant could waive such an objection, and that F&D in fact would waive its objection to transferring this whole case to the Central District.

The parties did not brief this issue in their papers, and the Court concludes that Kudsk's position is incorrect. 40 U.S.C. § 3133(b)(3) states:

> **(3) Venue.**-- A civil action brought under [the Miller Act] must be brought--
>
> . . .
>
> **(B)** in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy.

Prior to August 2002, the relevant venue provision of the Miller Act provided, "Every suit instituted under this section shall be brought . . . in the United States District Court for any district in which the contract was to be performed and executed *and not elsewhere*, irrespective of the amount in controversy in such suit . . . ." *See* 40 U.S.C. § 270(b) (West 2001) (emphasis added).

The Supreme Court has described Section 270(b) as "merely a venue requirement[.]" *See F.D. Rich Co. v. U.S. for Use of Indus. Lumber Co.*, 417 U.S. 116, 125 (1974). In so doing, the Supreme Court cited to a decision from the Second Circuit Court of Appeals, collecting cases finding this provision of the Miller Act to be a venue requirement, rather than a jurisdictional limitation, and whose "purpose is to give some incidental protection to Miller Act defendants." *See id.* at 125 n.10; *U.S. for Use & Benefit of Capolino Sons, Inc., v. Elec. & Missile Facilities, Inc.*, 364 F.2d 705, 707 (2d Cir. 1966). In *F.D. Rich*, the Supreme Court looked beyond the project location where the disputed plywood shipments were diverted (South Carolina) and found venue was proper where the contract for the shipments was executed and where the plywood was intended to be delivered (California). In so doing, the Supreme Court noted that the contractor and surety being

---

[4] Counsel for Kudsk also raised concerns about whether Bara would consent to transfer, but Kudsk sought and obtained a default against Bara in November 2017. *See* Dkt. Nos. 17, 23.

sued "have pointed to no prejudice resulting from the case's being heard in the California court and considerations of judicial economy and convenience clearly support venue in the District Court where all of respondent's claims arising from the . . . contract could be adjudicated in a single proceeding." *F.D. Rich*, 417 U.S. at 125-26. Since that ruling, other courts have found that venue for a Miller Act claim may properly lie in a district other than the one in which the contract was to be performed and executed, for instance, where the parties' contract contains a valid forum selection clause or where the defendant waives any objection to venue. *See, e.g., U.S. for Use & Benefit of Kashulines v. Thermo Contracting Corp.*, 437 F. Supp. 195, 197 n.1 (D.N.J. 1976); *Harold E. Nutter & Son Inc. v. Tetra Tech Tesoro Inc.*, No. 14-cv-2060-JCS, 2014 WL 4922525, at *3 (N.D. Cal. July 28, 2014). Similar considerations to those at play in *F.D. Rich* factor into the Court's decision here, namely, the judicial economy and convenience of trying all the claims together, an absence of prejudice to Kudsk in having the claims heard in the Central District, and the fact that the defendant, for whose protection the venue provision exists, consents to transfer.

In sum, the Court concludes that under the circumstances of this case, the Miller Act does not bar transfer of venue, and further finds that transfer of this case (i.e., Kudsk's claims and F&D's counterclaims together) to the Central District of California is warranted, for the convenience of parties and witnesses and in the interests of justice. *See* 28 U.S.C. § 1404(a).

**II.     Motion to Dismiss or for Judgment on the Pleadings (Dkt. No. 52)**

Kudsk also moves for an order dismissing the counterclaims under Federal Rule of Civil Procedure 12(b)(6) or for an order granting judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Kudsk argues that dismissal or judgment on the pleadings is proper because F&D has failed to state a claim for equitable indemnity, stating that that claim requires joint liability in tort owed by both F&D and Kudsk and that the allegations of the counterclaim are based on contractual obligations that do not sound in tort. Kudsk argues the claim for declaratory relief likewise fails because it is predicated on the equitable indemnity theory.

F&D opposes the motion but does not dispute Kudsk's analysis of the equitable indemnity claim. *See* Dkt. No. 54. Rather, F&D states that "[t]he fact that the Counterclaim relies on an

10

incorrect legal theory, 'equitable indemnity,' does not warrant dismissal because the Subcontractor Agreement pled in paragraphs 11 and 12 supports a contractual indemnity claim." *Id.* at 4. F&D asks that the Court grant leave to amend the counterclaim and attaches a proposed Amended Counterclaim. The proposed amendment brings counterclaims against Kudsk for contractual indemnity (for damages over $200,000 for delays on the Vandenberg HVAC Project), breach of contract (for damages of roughly $111,000 on the Vandenberg TLF subcontract due to the DOL withholding based on Kudsk's prevailing wages owed on the BOP Project), and declaratory relief. These are the same counterclaims that F&D has already filed against Kudsk in the Central District case. *See* Case No. 19-cv-00389, Dkt. No. 25 (C.D. Cal. Apr. 30, 2019).

In its reply brief, Kudsk argues that leave to amend must be denied because "[i]f granted leave, F&D will have two identical counterclaims pending in two different district courts at the same time." Dkt. No. 56 at 2.

To summarize, F&D concedes that the counterclaims currently on file in this case state an incorrect legal theory, and F&D seeks leave to amend its counterclaims to bring claims identical to those it already has pending in the Central District of California case. Accordingly, in light of the above ruling transferring this case in its entirety to the Central District of California, the Court finds Kudsk's motion to dismiss is MOOT.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Kudsk's motion to transfer and TRANSFERS this case in its entirety to the United States District Court for the Central District of California. The Court DENIES AS MOOT Kudsk's motion to dismiss or for judgment on the pleadings as to the counterclaims.

The Clerk shall TRANSFER this case to the Central District of California.

**IT IS SO ORDERED**.

Dated: July 2, 2019

_____
SUSAN ILLSTON
United States District Judge

11